SEYMOUR MOREHOUSE AND ANOTHER *vs.* GAD G. NORTHROP AND ANOTHER.

In an action on the case for certain alleged false and fraudulent representations in the sale of a chattel, evidence of representations of that character, not specifically alleged in the declaration, is admissible, as tending to prove the *scienter* and as affecting the question of damages.

The insufficiency of the declaration cannot be taken advantage of as ground for objection to the admissibility of evidence offered in support of the averments in the declaration.

An objection to the introduction of testimony a part of which is strictly admissible and the rest inadmissible, must be confined to the latter; and, if no such discrimination is made, the admission of the whole is not ground for granting a new trial.

Under an allegation of the payment of a certain sum of money as the consideration of a contract, evidence is admissible of payment by a note for that sum, which was received and accepted as money by the other party.

Morehouse *v.* Northrop.

Where, in an action against a vendor for false and fraudulent representations, the consideration of the sale is alleged to have been a note duly executed and delivered, evidence is admissible to show the subsequent negotiation and payment of the note, as proof of the value of the consideration, and thus affecting the question of damages.

*N* and *S*, being joint owners of a chattel, agreed that *N* should take it into his possession, in order to effect its sale for their joint benefit. *N* did so, and sold it by means of false and fraudulent representations, dividing the profits equally with *S*. In an action brought against both for the fraud by the vendee, it was *held*, that both were liable, although the representations were made in the absence of *S*, there being no proof that, on learning that they had been made, he repudiated the contract, or had ever offered to restore any part of the consideration.

The liability of *N* and *S* would be the same, if regarded as partners in the transaction.

By the ratification of the acts of an agent, in tort as well as in contract, a liability is incurred by the principal.

ACTION on the case against Gad G. Northrop and John J. Stillson, the declaration containing two counts. In the first it was alleged " that at the town of New Milford, on the 3d day of May, 1862, at the special instance and request of the defendants, they, the plaintiffs, bargained with the defendants to buy of them a large number of hogs, to wit, one hundred and forty-three hogs, which said hogs belonged to the said defendants jointly, at the price of five hundred and thirty-six dollars and twenty-five cents ; and the defendants then and there, by falsely and fraudulently warranting the said hogs to be sound and in a healthy condition, and free from all diseases and distempers whatsoever, then and there sold the said hogs to the plaintiffs, for and in consideration of the sum aforesaid, then and there paid by the plaintiffs to the defendants for the same. Nevertheless, the plaintiffs say that the said hogs, at the time of the said sale and warranty thereof, were in an unsound and unhealthy condition, and were badly diseased and distempered, so that they lost a large number of the said hogs, to wit, one hundred, which said last mentioned hogs died by reason of being so as aforesaid diseased and distempered at the time of said sale to the plaintiffs. And so the plaintiffs say that the defendants, on the day and year last aforesaid, at New Milford aforesaid, deceived them, the plaintiffs, in the said sale of said hogs, to the great damage of the plaintiffs."

In the second count it was further alleged that, at the same place and time, at the special instance and request of the defendants, they, the plaintiffs, bargained with the defendants to buy of them a great number of other hogs, to wit, one hundred and forty-three other hogs, belonging to the defendants jointly, at the price of five hundred and thirty-six dollars and twenty-five cents, to be paid as follows, to wit, by the note of the said Seymour Morehouse, dated May 3d, 1862, payable sixty days from its date, to the order of the said Silas H. Hill, at the Bank of Litchfield County, for said sum of five hundred and thirty-six dollars and twenty-five cents, for value received, endorsed by the said Silas H. Hill; which note was then and there made, executed, endorsed and delivered to the defendants; and the defendants then and there by falsely and fraudulently warranting, affirming and declaring that said last mentioned hogs were sound and in no wise sick, diseased or distempered, did then and there sell said last mentioned hogs to the plaintiffs, for and in consideration of the price last aforesaid, then and there paid by the plaintiffs to the defendants for the same, in the manner last aforesaid; nevertheless, the plaintiffs say that at the time of said last mentioned sale, said last mentioned hogs were not sound, but were sick, diseased and distempered, which was then and there well known to the defendants; but the defendants intending to cheat and defraud the plaintiffs, concealed the same from the plaintiffs, and the plaintiffs were wholly ignorant thereof, and a great number of said last mentioned hogs, to wit, one hundred, became and were so greatly diseased and distempered that they died; and so the plaintiffs wholly lost the same, to their great damage."

Damages were laid at the sum of $700. The general issue was pleaded, with notice of special matter to be given in evidence.

On the trial to the jury, before *Pardee, J.,* the plaintiffs offered evidence to prove that the defendant Northrop, at the time of the sale of the hogs and as part of the negotiation which resulted in the sale, declared to the plaintiffs that the hogs " were raised just across the Hudson River, in the coun-

ties next back of Newburg," in the state of New York. They also offered evidence to prove that the hogs were raised in the state of Ohio, and had been brought from thence by railroad and river transports to Newburg, where the defendants bought them; that these facts were known to the defendants at the time of the sale; and that hogs raised in Ohio and transported thence in the manner above described, were liable thereby to contract diseases and become unsound, and were more likely to be unhealthy and unsound than hogs raised in the counties about Newburg. The defendants objected to the admission in evidence of the above declaration of Northrop, but the court permitted the whole of the negotiations connected with the sale to go to the jury, charging them that this declaration was not admitted as a substantive ground of recovery, but that they might consider it, in connection with the other evidence above detailed, in reference to the question whether, if their verdict should be for the plaintiffs, it should include any, and if any, what amount of exemplary damages.

The plaintiffs also offered in evidence a note, corresponding to that described in the second count of their declaration, together with proof that the note was duly executed and delivered, in payment for the hogs, immediately upon the completion and in accordance with the terms of the contract of sale, that the defendants subsequently had it discounted at a bank for their benefit, and that it was duly paid at maturity. To the admission of the note and the accompanying evidence the defendants objected, on the ground of variance, and also because it was not alleged in the declaration that the note had been paid, but the court admitted all the evidence thus offered.

It was admitted that the defendants, at Newburg, became the joint owners of the hogs, in equal shares, and so continued until their sale to the plaintiffs; that at Pawling, in the state of New York, the hogs were taken by Northrop into his possession and under his control, in pursuance of an arrangement there made between Stillson and himself, for the express purpose of effecting a sale of them for the joint and equal benefit of both owners; and that Northrop afterwards, in the absence

of Stillson, sold the hogs at New Milford to the plaintiffs, at a profit, which was equally divided between the defendants.

The plaintiffs also offered evidence to prove that Northrop, at the time of the sale, and as one of its terms and conditions, made the warranty, and the affirmations and representations described in their declaration, and that the same were false and fraudulent, and well known to him at the time to be untrue.

The defendants requested the court to charge the jury,—

1. That the plaintiffs could not recover as against either of the defendants, and particularly against Stillson, without proving a joint contract, as alleged in the declaration.

2. That the plaintiffs could not recover for any fraud set up in the declaration unless it was a joint fraud ; that at any rate Northrop, though a part owner with Stillson, could not bind Stillson by any fraudulent representations to which Stillson was not a party and of which he had no knowledge.

3. That the plaintiffs' declaration in both counts is an action upon a contract of warranty, and that proof of fraud without proof of the warranty was not sufficient to entitle the plaintiffs to recover in this form of action.

4. That the evidence that Northrop represented that the hogs were raised in the counties near Newburg, in the state of New York, was not admissible as against either defendant, as no such fraudulent representation was declared upon in the declaration.

The court did not so charge the jury, but charged them that, if they believed from the evidence that at the time of the sale the defendant Northrop did, in the absence of the defendant Stillson, falsely and fraudulently warrant the hogs to the plaintiffs to be sound and free from all disease, and that the plaintiffs had suffered damage thereby, or if, from the evidence, they believed that Northrop at the time of the sale, in the absence of Stillson, made a false and deceitful representation to the plaintiffs, that the hogs were sound and in no wise sick, diseased or distempered, with the design and for the purpose of inducing the plaintiffs to purchase the hogs, knowing or believing such representation to be untrue, and

that the plaintiffs were induced to make, and did make, such purchase by reason of such false and deceitful representations, and had suffered damage thereby, they might render a verdict against both defendants; otherwise their verdict should be for the defendants.

The jury returned a verdict for the plaintiffs to recover $323 damages; and the defendants moved for a new trial, on account of the admission of the evidence objected to, and of the refusal of the court to charge as requested.

*Graves* and *Turrill*, in support of the motion, contended, that the action being upon a breach of contract of warranty, sounding in tort, and therefore one in which actual damages only were recoverable, the court erred in admitting the declaration of Northrop, as affecting the question of exemplary damages; *Bartholomew* v. *Bushnell*, 20 Conn., 279; that the note was clearly inadmissible under the first count, and as under the facts stated in the second count the plaintiffs could have suffered no damage except by the negotiation or payment of the note, such negotiation and payment were material facts which should have been averred in the declaration, and not having been averred could not be received in evidence; *Griffin* v. *Pratt*, 3 Conn., 513; and that there was error in the refusal of the court to charge as requested upon the necessity of proving a joint contract, or a joint fraud; *Walcott* v. *Canfield*, 3 Conn., 194; *Mitchell* v. *Ostrom*, 2 Hill., 520; and in the charge as given upon the sufficiency of proof of fraud without warranty; *Bartholomew* v. *Bushnell*, supra; *Booth* v. *Northrop*, 27 Conn., 325.

*H. S. Sanford* and *E. W. Seymour*, contra, insisted that this was substantially an action for deceit, and that the declaration of Northrop, objected to by the defendants, was properly received to show his intention and knowledge in making the other declarations alleged; *Mumford* v. *McPherson*, 1 Johns., 417; that the proof of payment of the note was directly in support of the general averment of payment in the first count, and under the second count the facts of negotia-

tion and payment were admissible to show the consideration to have been valuable, although no proof to either of these points was material to the plaintiffs' case ; that the objection being taken generally to the admission of the note and evidence of its payment, could not in any event be sustained ; *State* v. *Alford,* 31 Conn., 40 ; that the admitted facts established a joint contract of sale by both defendants, and that Stillson was liable for Northrop's representations not only on this account, but on the grounds of agency and partnership ; 2 Hilliard on Torts, 462 ; *Fuller* v. *Wilson,* 3 Ad. & El., 58 ; *Locke* v. *Stearns,* 1 Met., 560 ; Story on Agency, 59 ; Story on Part., 18, and note ; *Loomis* v. *Marshall,* 12 Conn., 69 ; *Manufacturers & Mechanics Bank* v. *Gore,* 15 Mass., 75.

CARPENTER, J. The plaintiffs had their election to bring their action in assumpsit or tort. They chose the latter. The declaration contains two counts ; the first is for a false warranty, the second is for a false warranty and also for a fraud in the sale of the hogs. Whether this count would have stood the test of a special demurrer, it is not now necessary to enquire. It is in form and substance a count for fraud, and with the exception of the word warranting, is in the usual form. We think it was so intended by the pleader, and as such was properly joined with a count for false warranty. *Humiston* v. *Smith,* 22 Conn., 19.

The other questions arising upon the record will be considered in their order.

1. The defendants objected to the evidence offered to prove the declaration of Northrop, made during the negotiations which resulted in the sale, that the hogs in question "*were raised just across the Hudson river in the counties next back of Newburgh*" in the state of New York.

The view we have taken of the nature of this action relieves this question of all difficulty. Under the second count the plaintiffs must not only prove the false representations, but must also prove that the defendant Northrop knew them to be false. This evidence was offered as tending to prove the

*scienter*, and as affecting the question of damages. For this purpose we think the evidence was properly admitted.

If it be notoriously true, as the plaintiffs claimed, that hogs raised in that locality were much more likely to be sound and free from disease than those transported from the west, the motive of Northrop in making the declaration is apparent. He could have had no other object, assuming the declaration to be untrue, then to mislead and deceive the plaintiffs in respect to the soundness of the hogs. He had declared them to be sound and free from disease ; and then to allay all suspicion and induce the plaintiffs to believe this representation, he adds that they were raised just back of Newburgh. It was an artifice well calculated to deceive the plaintiffs, and from it, in connection with the other proof, the jury might well infer that they were deceived, and that it was done willfully.

2. The note described in the second count, and the evidence that it was delivered to the defendants in payment, received and negotiated by them, and paid by the plaintiffs when due, were objected to as inadmissible ; but the court overruled the objection. The ground of the objection was that there was no allegation that the note had been paid, and because it was a variance from the allegations in the declaration. The latter objection is not insisted on. The note is correctly described, and it is alleged that the hogs were to be paid for by the note, and that it was delivered to the defendants at the time of sale. These allegations are pertinent to the plaintiffs' case and may be proved whether the declaration is sufficient or otherwise. *Adams* v. *Way*, 32 Conn., 160. The insufficiency of the declaration cannot be taken advantage of by way of objection to evidence offered in support of the averments in the declaration. Thus far then the evidence offered was admissible ; and if the rest were inadmissible we should refuse to grant a new trial, for the reason that the defendants do not discriminate between admissible and inadmissible testimony and confine their objection to the latter. Reg. Gen., 18 Conn., 574 ; *Fitch* v. *Woodruff & Beach Iron Works*, 29 Conn., 82 ; *State* v. *Alford*, 31 Conn., 40.

But we are of the opinion that all the evidence was strictly admissible. The first count alleges payment without specifying how it was made. This allegation may be proved, either by proof of payment in money, or of payment in some other thing which the defendants received and accepted *as money*; such as bank checks, bills of exchange, promissory notes or the like. All the evidence objected to tended to prove this averment, and from this evidence alone the jury would have been justified in finding it true.

In respect to the second count, it was unnecessary for the plaintiffs to aver or prove the negotiation or payment of the note in order to maintain their action. The consideration of the contract was the note, and when that was delivered the contract was complete, and the plaintiffs had a right of action immediately. They were not bound to wait for the note to mature, but might sue at once, and while the note was in the defendants' hands. This part of the evidence therefore was not essential to the plaintiffs' right of recovery. But we are of the opinion that it was admissible nevertheless. It proved the value of the consideration, and that it was not a mere technical one. That fact might well be considered by the jury in estimating the damages.

3. The last objection respects the charge of the court to the jury. The defendants were joint owners of the property in question. They made an arrangement by which Northrop took it into his keeping, and under his control and management, for the purpose of effecting a sale thereof, for the equal and joint profit and benefit of the owners. Northrop in the absence of Stillson sold the hogs at a profit which was equally divided between them. The case does not show that Stillson, after the circumstances of the warranty and fraud came to his knowledge, ever repudiated the contract, or offered to restore any part of the consideration; but on the contrary he still insists upon retaining his portion of the profits. Under these circumstances the jury were told, in substance, that if, in the contract of sale, there was a false warranty or fraud, whereby the plaintiffs had sustained damage, both defendants were liable. We see no objection to this charge.

Northrop was expressly authorized to sell.   In doing so, as the jury must have found, he falsely warranted the property sold, or was guilty of fraud.   Stillson by his subsequent conduct ratified the contract, not in part but *in toto,* including the warranty and deceit.   He was therefore a party to the contract.   He shared in the profits, and must not now complain that he is required to share in the responsibility. By the ratification of the acts of an agent, in tort as well as in contract, a liability is incurred by the principal.   *Parsons on Contracts,* 51, 52, and cases there cited.

If the defendants are to be regarded as partners in this transaction their liability will be the same.   That all the members of a firm are answerable for a false warranty made by one of the members, in a sale of partnership property, within the scope of his authority, is too clear for argument. They are equally liable for a fraud under the same circumstances, especially where they share in the profits.   *Locke* v. *Stearns,* 1 Met., 560.

We do not advise a new trial.

In this opinion the other judges concurred.